P. STERLING KERR, ESQ.
Nevada Bar No. 3978
GEORGE E. ROBINSON, ESQ.
Nevada Bar No. 9667
KERR SIMPSON ATTORNEYS AT LAW
2900 Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Telephone No. (702) 451–2055
sterling@kerrsimpsonlaw.com
george@kerrsimpsonlaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TIMOTHY MCCOY, an individual; KENNETH KENNEDY, an individual; ALISSA KING, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LAS VEGAS, a political entity; Officer JORGE CALOCA, an individual; Officer MAURICE FRAZIER an individual; Officer DAGMAWE WOLDEHAWARIAT, an individual; Officer ALBERT PALTAO, an individual; Officer JONATHAN GALLEGOS, an individual; Officer SERGIO GUZMAN, an individual,<br><br>Defendants. | Case No.: 2:25-cv-361-GMN-MDC<br><br>**PLAINTIFFS' RESPONSE TO MARSHALS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br>**(ECF 35)** |

Plaintiffs TIMOTHY MCCOY, KENNETH KENNEDY, and ALISSA KING (hereinafter "Plaintiffs") and through their undersigned counsel of record, the law firm of Kerr Simpson Attorneys at Law, hereby respectfully submit this Response to Defendants Jorge Caloca, Maurice Frazier, Dagmawe Woldehawariat, Albert Paltao, Jonathan Gallegos, and Sergio Guzman's Motion to Dismiss the First Amended Complaint. This Response is made and based upon the pleadings and papers on file herein and the below Memorandum of Points and

/ / /

Authorities.

Dated this 5th day of October, 2025.

KERR SIMPSON ATTORNEYS AT LAW

/s/ George E. Robinson
P. STERLING KERR, ESQ.
Nevada Bar No. 3978
GEORGE E. ROBINSON, ESQ.
Nevada Bar No. 9667
2900 W Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
*Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The First Amended Complaint (ECF 10) properly addresses the incompetence and brutal misconduct of the City of Las Vegas' (or "the City") law enforcement officers Defendants Jorge Caloca, Maurice Frazier, Dagmawe Woldehawariat, Albert Paltao, Jonathan Gallegos, and Sergio Guzman (the "Officer Defendants"). The claims for Violation of Constitutional Rights 42 U.S.C. §1983, Monell Claim/Violation of Constitutional Rights, Assault and Battery, Intentional Infliction of Emotional Distress, and False Imprisonment are properly pleaded pursuant to FRCP 8. The facts as stated in the First Amended Complaint, and reproduced below, are clearly specific enough to survive a Motion to Dismiss. Therefore, the Motion to Dismiss should be denied in its entirety, and the Plaintiffs should be able to conduct discovery on to prove their allegations against the City and the Officer Defendants.

### II. FACTS[1]

On November 11, 2023, at around 9 p.m., Plaintiffs decided to drive to the Fremont Street Experience to have dinner at a restaurant and walk around. Pursuant to the report he prepared

---
[1] Facts are taken from the First Amended Complaint (ECF 10 at §24-59

regarding this incident, at this same time, Caloca was operating as a marked patrol unit around the Fremont Street Experience at 4th St. and Fremont.

While conducting a person stop, Caloca noticed a black Dodge Durango ("the Durango") traveling northbound on 4th Street, and the driver "used his right hand to make gestures as if he was holding a firearm in a threatening manner" and simulated shooting Caloca with his hand. The black Dodge Durango entered the Neonopolis parking garage. Close behind the Durango, the Plaintiffs were driving in a gray Hyundai and entered the same parking garage.

Pursuant to surveillance video, the occupants of the Durango are seen going up the elevator to the ground floor, including a black male adult with a bright colored sweater that Caloca had seen making the gun hand gesture. Plaintiffs got in the same elevator shortly after and went up to the ground level from the parking structure.  When Plaintiffs exited the elevator on the ground floor, there was a group of The Officer Defendants waiting for them.  The Officer Defendants did not stop the black male adult in the colorful sweater who had actually made the hand gesture, but they stopped Plaintiffs.  Mistakenly, The Officer Defendants began aggressively questioning Plaintiffs about the hand gestures that they didn't make as the black male adult that made the hand gestures had come out of the elevator shortly before.  Plaintiffs told the officers that they did not make any hand gestures and didn't know anything about it.  Plaintiffs repeatedly asked what kind of car the people doing the hand gestures were in, in trying to assist the officers to identify the culprits.  The Officer Defendants continued to aggressively question Plaintiffs about the hand gestures that they were clueless about.

After speaking with The Officer Defendants, MCCOY walked away as he was watching a football game on his phone thinking that the interaction was over.  As he walked away, numerous The Officer Defendants tackled MCCOY from behind, violently slammed him on the concrete, ripped out his hair, drew their firearms and tasers on him, put a knee in his back, and cuffed him.

KING was walking in the same group and inches away when her brother, McCOY, was violently attacked from behind by The Officer Defendants. KING and KENNEDY were shocked and extremely upset that MCCOY was getting arrested as they had done nothing wrong. After this excessive use of force on an innocent man, The Officer Defendants paraded MCCOY in handcuffs by hundreds of onlookers on Fremont Street.

KING and KENNEDY followed, understandably very upset at the situation, yelling at officers because they had wrongly battered and detained MCCOY. KING recorded the incident on her phone. The Officer Defendants brought MCCOY to Las Vegas Blvd. where the police car was parked and made MCCOY stand in front of the car as hundreds of onlookers watched. KING and KENNEDY attempted to approach MCCOY as he stood by the police car to ask him about his condition after being battered and wrongly detained by the officers.

The Officer Defendants would not allow KING and KENNEDY to get close to MCCOY. Another friend of theirs, a white female, who was supposed to meet with KING, KENNEDY, and MCCOY at the Fremont Street Experience, was allowed to walk right up to MCCOY and speak with him. KING and KENNEDY stayed outside the "perimeter" guarded by the The Officer Defendants while the improper arrest and detention of MCCOY was taking place.

While outside the perimeter, KENNEDY was filming the situation. For no reason, Guzman and numerous The Officer Defendants tackled KENNEDY, violently slammed him on the concrete, ripped out his hair, put a knee in his back and cuffed him. KING was close to her boyfriend, KENNEDY, when he was violently attacked by The Officer Defendants while questioning The Officer Defendants about the arrest of McCOY. KENNEDY was arrested and taken to the Clark County Detention Center and imprisoned based on the false allegations of the The Officer Defendants.

In his Police Report, Officer JORGE CALOCA makes a number of false statements about

the Plaintiffs in order to justify the The Officer Defendants' illegal behavior. Upon information and belief, these false statements were made in order to convince the Las Vegas City Attorney's Office and the Clark County District Attorney's Office to file charges against the Plaintiffs. On November 11, 2023, a Criminal Citation was improperly filed against MCCOY in the City of Las Vegas Municipal Court for Obstructing/False Info to Police Officer.

On December 8, 2023, a Criminal Complaint was improperly filed in the Las Vegas Justice Court against KENNETH KENNEDY for Battery on a Police Officer. Plaintiffs had to retain counsel to defend against the charges. The Complaint in the Las Vegas Justice Court against KENNEDY was dismissed on or about July 17, 2024, after prosecutors properly realized that the charge was bogus. The Complaint in the Las Vegas Municipal Court was dismissed on or about September 12, 2024, after prosecutors properly realized that the charge was bogus.

### III. LEGAL STANDARD

According to FRCP 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions or a formulaic recitation of the elements of a cause of action. . . " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (internal quotations omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). This rule does "not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The pleadings need only give the opposing party fair notice of a claim and the claim's basis. *Conley*, 355 U.S. at 47, 78 S.Ct. 99; *Sagana*, 384 F.3d at 736; Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir.2001). The pleadings are to "be construed as to do substantial justice," and "no technical forms of pleading ... are required." Fed. Rules Civ. Pro. 8(e)(1), 8(f); *Sagana*, 384 F.3d at 736; *Fontana*, 262 F.3d at 877.

Where the complaint permits the court to infer more than the mere possibility of misconduct, the complaint has "alleged - but not shown - that the pleader is entitled to relief." *Id*. at 679 (internal quotations omitted). When the allegations in a complaint have crossed the line from conceivable to plausible, plaintiff's claim must survive. *See Twombly*, 550 U.S. at 570.

### IV. ANALYSIS

#### A. THE CLAIMS AGAINST THE OFFICERS DEFENDANTS ARE PROPERLY PLEADED AND SHOULD NOT BE DISMISSED

The Claims alleged and the facts presented are sufficient for the pleading stage and should not be dismissed. The City cites to *Jones v. Williams* regarding the team liability instruction. 297 F.3d 930, 935 (9th Cir. 2002). The Jones case dealt with the search of a home by a large group of officers related to weapons and contraband related to gang activity. *Id*. at 933. When the officers went to certain parts of the home related to the search, there were no witnesses to the conduct of the officers. *Id*.

The Ninth Circuit distinguishes the Jones case from a case cited by the plaintiff in *Jones*, *Rutherford v. City of Berkeley*, 780 F.2d 1444, 1448 (9th Cir.1986). The *Jones* Court discusses Rutherford in its opinion,

> In Rutherford, the plaintiff alleged that while he was standing outside a Berkeley residence hotel three police officers threw him to the ground and punched, kicked, and handcuffed him. Id. at 1445. The defendants denied assaulting Rutherford but admitted they handcuffed him and placed him under arrest. Id. Rutherford was not certain which of the three officers actually punched or kicked him while he was on the ground, but he testified that he saw each of their faces while he was being assaulted. Id. There, we held that the district court erred when it granted a directed

verdict for defendants because there was sufficient evidence for the jury to reasonably infer that the three officers participated in the beating of Rutherford. Id. at 1448.

…

In Rutherford, our focus was on permissible inferences. We did not indicate that the jury could find against the defendants without finding that they had some personal involvement in the beating. Rather, Rutherford had produced enough evidence to sustain a verdict against the officers, and we held that the jury could use Rutherford's testimony as evidence to find some individual participation by each officer in the unlawful conduct. Id. His testimony provided the required link of personal involvement to deprivation of his constitutional rights required to hold an officer liable.

*Id*. at 935.

The *Jones* case discusses Jury Instructions which attempt to find liability for a team of Defendants without evidence related to each individual defendant, not a pleading standard in a Motion to Dismiss. This case is clearly more similar to *Rutherford* as the Plaintiffs will be able to provide evidence to the jury as to the facts regarding the claims in question. At the pleading stage, the Plaintiffs should be able to name all of the individuals involved and prosecute the case in order to find facts as to each individual defendant's conduct as per the claims. The grouping of the "Officer Defendants" is sufficient at the pleading stage of the case, and the claims should not be dismissed.

Defendants also cite to the *Leer* case. 844 F.2d 628 (9th Cir. 1988). In the *Leer* case, the plaintiffs made claims against the administrators of a prison and one prison guard for failure to prevent the stabbing of an inmate. *Id*. at 630.

When plaintiffs, such as the inmates, seek to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the eighth amendment deprivation must be more refined. We must focus on whether the individual defendant was in a position to take steps to avert the stabbing incident, but failed to do so intentionally or with deliberate indifference. In order to resolve this causation issue, we must take a very individualized approach which accounts for the duties, discretion, and means of each defendant. See Williams, 689 F.2d at 1384. Especially when, as in this case, a prisoner seeks to hold a prison employee individually liable because another prisoner attacked him, the prisoner must establish individual fault. See Berg, 794

F.2d at 460; Bogard v. Cook, 586 F.2d 399, 418 (5th Cir.1978), cert. denied, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979). Sweeping conclusory allegations will not suffice to prevent summary judgment. See Berg, 794 F.2d at 460.

*Id*. at 633-634.

The *Leer* case is clearly different from this situation, and there are very different standards in place regarding prisons. In *Leer*, the court was concerned with deliberate indifference. Here, the officers are clearly affirmatively involved in the claims alleged. *Leer* was also determined at the summary judgment stage, so the plaintiffs had an opportunity to conduct discovery on the action or inaction of the defendants. *Id*. at 631. The case was not dismissed at the pleading stage.

The Complaint is specific as to exactly what happened to the Plaintiffs. The individual actions of the individual officers will be found during discovery and testimony and other evidence will be submitted to the jury at trial as to the exact actions at trial. As alleged in the Amended Complaint, this is a group of officers acting in concert with one another to commit the alleged batteries and constitutional violations.

B. <u>LEAVE TO AMEND SHOULD BE GRANTED TO REMEDY ANY DEFIENCIES IN THE COMPLAINT</u>

FRCP 15(a) directs that leave shall be freely given to amend a pleading when justice so requires. Insofar as this Court finds Plaintiffs' Amended Complaint to be insufficiently pleaded pursuant to FRCP 8, Plaintiffs request leave of this Court to amend the Complaint accordingly.

///

///

///

## V. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss as the Plaintiffs have properly pleaded their claims pursuant to FRCP 8 and the corresponding case law. In the alternative, the Plaintiffs ask for leave to amend to rectify any deficiencies in the Amended Complaint

Dated this 6th day of October, 2025.

KERR SIMPSON ATTORNEYS AT LAW

/s/ George E. Robinson
P. STERLING KERR, ESQ.
Nevada Bar No. 3978
GEORGE E. ROBINSON, ESQ.
Nevada Bar No. 9667
2900 W Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies on October 6, 2025, a true and correct copy of the **RESPONSE TO DEFENDANT MARSHALS MOTION TO DISMISS AMENDED COMPLAINT** was served to the following at their last known address(es), facsimile numbers and/or e-mail/other electronic means, pursuant to:

   __X__   **BY E-MAIL AND/OR ELECTRONIC MEANS**: F.R.C.P. 5(b)(2)(D) and addresses (s) having consented to electronic service, I via e-mail or other electronic means to the e-mail address(es) of the addressee(s).

Jeffry M. Dorocak, NV Bar No. 13109
Nechole Garcia, NV Bar 12746
Timothy J. Geswein, NV Bar No. 10049
LAS VEGAS CITY ATTORNEY'S OFFICE
495 S. Main Street, 6th Floor
Las Vegas, Nevada 89101
T: (702) 229-6629
*Attorneys for the City of Las Vegas*

                                                __/s/ Jennifer Hogan__
                                                An employee of the KERR SIMPSON ATTORNEYS AT LAW